[No. 16232.  Department Two.  March 2, 1921.]

NORTHUP-HAGE LUMBER COMPANY, *Appellant*, v.

EUREKA CEDAR LUMBER & SHINGLE

COMPANY, *Respondent*.[1]

SALES (29)—CONTRACT—CONSTRUCTION — SUBJECT-MATTER — QUANTITY AND ASCERTAINMENT. A contract to sell a mill's "entire output" of lath up to a specified date, to be air or kiln dried, means the output of air or kiln dried lath, where the kiln capacity was limited to the knowledge of the parties, and does not include lath cut which could not be dried within the period stipulated.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered July 20, 1920, upon findings in favor of the defendant, in an action on contract, tried to the court. Affirmed.

*Douglas & Schramm*, for appellant.

*W. H. Abel*, for respondent.

[1]Reported in 195 Pac. 1052.

TOLMAN, J.—This is an action to recover damages for an alleged breach of a written contract for the purchase and sale of lath. From a judgment denying recovery, the plaintiff appeals.

The principal controversy is over the construction to be placed upon the contract, which reads as follows:

Purchase Order

### NORTHUP-HAGE LUMBER COMPANY

Pacific Coast
Timbers, Lumber, Lath and Shingles
525-526 Henry Building
Seattle, Wash., Oct. 24, 1919
Order No. 316-327

Eureka Cedar Lbr. & Shgle Company,
Hoquiam, Washington.

Gentlemen: Please enter our order for the following:

Ship to Northup-Hage Lumber Company at Cincinnati, Ohio.

Route     Any Route

Price F. O. B. Cincinnati, Ohio—70½c rate. Underweights to Mill.

Terms 100% less 2% Advance. Time of shipment as soon as possible.

| Quantity | Description | Price |
|---|---|---|
| | Your entire output No. 1 Fir or Hemlock Lath | |
| | 4' up to and including January 31, 1920 | |
| | Air or Kiln Dried | 10.00 |
| | West Coast Association Standard Sizes | |
| | It is our understanding that we can depend on receiving a minimum of twelve cars during the above specified time, but you do not guarantee any fixed amount. | |
| | All quotations are made on the basis of present freight rates. Any increase in freight rates or taxes assessed by the U. S. Government on freight bills must be absorbed by purchaser. | |

We accept above order subject to conditions
noted, and will ship about....................
Date..............      Signed Eureka Cedar Lumber & Shingle Co.
By Gregg

The trial court found:

"I. That the defendant fully performed the contract in suit and delivered to the plaintiff all number 1 lath manufactured by it during the contract period.

"II.   That the manufacture of lath was not complete until the same was dried and in deliverable condition, and all such manufactured during said period was delivered pursuant to the contract.

"III.   That the defendant did not sell third parties any part of its output during said contract period, except that it did sell locally 48,000 lath, but it substituted and delivered to the plaintiff 140,000 spruce lath which were accepted by the plaintiff in lieu thereof; that the plaintiff has suffered no damage."

Disregarding the evidence leading up to the making of the contract, which appellant urges was inadmissible, except only such as tends to show what was within the contemplation of the parties, it appears that respondent operates a saw mill in which it cuts lath as a by-product; that its dry kiln capacity is limited, and it can produce air and kiln dried lath only as the weather and its dry kiln capacity will permit, all of which was well known to appellant at the time the contract was entered into.   It appears that respondent, during the time fixed in the contract, cut many more lath than it could dry within that period, because of its limited drying capacity, and that the excess green lath was sold to others.

Appellant contends that the words "your entire output" used in the contract mean respondent's entire cut, while respondent contends that, as the contract provides that the lath shall be air or kiln dried, there was no output within the meaning of the contract except as the dry product was produced.   We think the contract, the original of which is before us, must be so read.   Taking the contract as a whole, it clearly appears that the buyer might have refused to accept, under its terms, lath not air or kiln dried, and that, since delivery was to be f. o. b. Cincinnati, with underweights to the mill, respondent might have suffered

financially by shipping green lath, even though the price of dry and green lath be the same.

"Output," must necessarily mean the finished production of the thing sold, and since, within the terms of the contract, it could be finished and ready for shipment by rail only by being air or kiln dried, the lath cut by respondent did not become its output, as the term is here used, until air or kiln dried, as provided in the contract.

The evidence amply sustains the findings of the trial court that the respondent complied with the contract so construed; and finding no reversible error, the judgment appealed from is affirmed.

PARKER, C. J., MOUNT, MITCHELL, and MAIN, JJ., concur.